**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 2, 2016**

# In the Court of Appeals of Georgia

A15A2298. HA&W FINANCIAL ADVISORS, LLC v. JOHNSON.

BARNES, Presiding Judge.

This appeal from a jury verdict arises out of a dispute between Appellant HA&W Financial Advisors, LLC ("HAW Financial") and its former employee, Appellee Allen H. Johnson, Jr., regarding Johnson's employment agreement and certain promissory notes that he executed in favor of HAW Financial. HAW Financial sued Johnson for breach of the employment agreement and to collect on the notes, and Johnson answered and counterclaimed against HAW Financial for, among other things, breach of certain representations and warranties contained in the employment agreement. HAW Financial's claims and Johnson's counterclaims were tried before a jury. The verdict form gave the jury three options: (1) find for HAW Financial and award it damages; (2) find for Johnson and award him damages; or (3) simply find for Johnson. The jury chose the third option, "We, the jury, find for [Johnson]."

Following the jury trial, the trial court awarded attorney fees and expenses to Johnson as the "prevailing party" under the terms of the attorney fees provision of the employment agreement.

HAW Financial now appeals, contending that the trial court erred in denying its motion for a directed verdict. HAW Financial further contends that it should be granted a new trial because the trial court erroneously excluded from evidence an email sent to the company by a federal administrative agency and erroneously instructed the jury on the effect of the merger clause in the employment agreement. Lastly, HAW Financial contends that the trial court erred in awarding contractual attorney fees to Johnson as the prevailing party. For the reasons discussed below, we affirm.

Following a jury trial, we view the evidence in the light most favorable to the verdict. *Allstate Indem. Co. v. Payton*, 289 Ga. App. 202, 203 (656 SE2d 554) (2008). So viewed, the evidence shows that Habif, Arogeti & Wynn, LLP ("HAW LLP") is a public accounting firm with its client base centered in and around Atlanta. HA&W Wealth Management, LLC ("HAW Wealth") is an affiliate of HAW LLP that provides financial advisory services to clients, including assistance with investment decisions and retirement planning.

2

*Recruitment of Johnson.* Johnson is a financial advisor with a large number of high net-worth clients and a portfolio approaching $100 million. Over several months in 2010, HAW Wealth recruited Johnson to join its financial advisory business. Johnson attended group presentations that HAW Wealth conducted for recruitment purposes and also had several discussions with company management about transferring his client base. During these discussions, Johnson emphasized that many of his largest net-worth clients had margin trading accounts and needed access to certain lending rates. According to Johnson, representatives of HAW Wealth assured him that his clients would have access to comparable margin accounts and interest rates, and that HAW LLP would be investing $10 million to grow the financial advisory business.

Johnson and HAW Wealth, through their respective counsel, negotiated the specific terms of a written employment agreement. Shortly before the agreement was finalized, HAW Wealth formed HAW Financial as its wholly owned subsidiary, and HAW Financial was the party with whom Johnson contracted. HAW Wealth intended for HAW Financial to house the financial advisory business of Johnson and other high performing financial advisors, who would be offered an opportunity to obtain an equity ownership interest in the new company as a performance incentive. HAW

3

Wealth itself was not a party to the employment agreement, which Johnson and HAW Financial executed on September 30, 2010.

*The Terms of Johnson's Employment Agreement.* As compensation for Johnson's decision to bring his client base to HAW Financial and further grow his financial advisory practice, the employment agreement entitled Johnson to an "annual base payout" representing a percentage of HAW Financial's revenues, as well as a five percent equity interest in HAW Financial if he met certain financial goals. The employment agreement also entitled Johnson to a "transition incentive payment" in the form of an upfront $950,000 forgivable loan evidenced by a promissory note. As part of his transition incentive payment, the employment agreement further provided Johnson with the option of receiving up to an additional $225,000 in forgivable loans evidenced by promissory notes during his employment. A sample promissory note was included as an exhibit to the employment agreement and the terms of the note were incorporated by reference.

If Johnson met certain revenue targets, the loans provided to him as a transition incentive payment would be forgiven over time in quarterly installments and the promissory notes ultimately would be canceled. However, if Johnson resigned from HAW Financial, the employment agreement required him to repay any outstanding

principal and accrued interest on the notes within 90 days of his resignation. Upon his resignation, Johnson would be subject to several restrictive covenants contained in the agreement, including a covenant not to solicit certain "restricted" clients.

In addition to his compensation package, Johnson specifically bargained for several representations and warranties in the employment agreement. Some of these representations were contained in paragraph 6.12, including a representation that HAW Financial and its affiliates were not currently under investigation "or aware of any circumstances that would render them subject to investigation or enforcement actions by any regulatory or self-regulatory organization." HAW Wealth was defined in the agreement as an "affiliate" of HAW Financial.

The employment agreement also included an "entire agreement," or merger, clause. The merger clause provided that all prior understandings and agreements between the "parties" regarding the subject matter of the employment agreement were merged into the agreement, and that any modifications to the agreement had to be in writing and signed by "both parties."

Finally, the employment agreement contained a provision that entitled the "prevailing party" to recover reasonable attorney fees in the event of a legal action commenced by either party to enforce the agreement. The promissory notes entitled

5

HAW Financial to an award of reasonable attorney fees incurred in collecting amounts owed on the notes if Johnson defaulted.

*Johnson's Employment and Resignation.* After executing the employment agreement, Johnson began work at HAW Financial in early October 2010. That month, Johnson received the $950,000 forgivable loan and executed a promissory note for that amount. In January and February 2011, Johnson received the additional forgivable loans totaling $225,000 and executed notes for those amounts. The promissory notes that evidenced the loans expressly referenced the employment agreement and incorporated the contractual terms that addressed the circumstances under which the loans would or would not be forgiven.

Over the course of his subsequent two-and-a-half year tenure at HAW Financial, Johnson repeatedly expressed frustration to company management about the manner in which the business was being operated and what he believed had been misrepresentations made to him during his recruitment and in the employment agreement. For example, HAW LLP never invested $10 million to grow the financial advisory business, and Johnson's clients were not given access to margin accounts and interest rates comparable to what they had received at Johnson's former firm. Johnson also learned for the first time that in the weeks leading up to the signing of

6

his employment agreement, both the United States Securities and Exchange Commission ("SEC") and the Financial Industry Regulatory Authority ("FINRA") had conducted on-site examinations of HAW Wealth to determine whether it had breached its duties owed to clients by recommending an investment that turned out to be fraudulent.

Ultimately, in June 2013, Johnson resigned from HAW Financial, contending that HAW Financial had broken the representations and warranties that it made to him to induce him to work there, making it impossible for him to attract and retain clients. Johnson did not pay back the outstanding principal and accrued interest on the promissory notes after his resignation. Johnson obtained employment with a new firm, and many of his clients moved their accounts there.

*The Litigation.* HAW Financial originally sued Johnson to enforce the non-solicitation covenant in the employment agreement. The parties agreed to a "temporary consent order" in which Johnson would abide by the non-solicitation restrictive covenant, but with the understanding that he would be permitted to "service the accounts of any [HAW Financial] clients who elect to transfer accounts without solicitation by Johnson." HAW Financial later voluntarily dismissed its restrictive covenant claim without prejudice.

HAW Financial filed an amended complaint that omitted any claims based on the non-solicitation covenant and asserted new claims against Johnson for breach of the employment agreement and the promissory notes. Among other things, HAW Financial contended that Johnson had breached his contractual obligations in the manner in which he had resigned and in his failure to pay back the outstanding principal and accrued interest on the notes after his resignation. HAW Financial sought to collect the outstanding principal and accrued interest on the notes, plus statutory and contractual attorney fees.

Johnson answered, denying liability. He asserted several affirmative defenses, including that he was excused from repaying the loans because of HAW Financial's own material breaches of contract. Johnson also asserted several counterclaims, including for breach of the employment agreement, fraud, breach of fiduciary duty, and other torts. Among other things, Johnson sought a declaration that no amount was owed on the notes, damages for the alleged torts and breaches of contract, and attorney fees.

The case was tried before a jury over five days in May 2015. Following the close of evidence, HAW Financial moved for a directed verdict on its claim for breach of contract and on Johnson's counterclaims. HAW Financial argued that the

uncontroverted evidence showed that Johnson had ratified and reaffirmed the employment agreement and promissory notes by continuing to work at the company after learning of the alleged contractual misrepresentations and breaches of warranty. The trial court denied the motion.

After closing argument and the charge of court, the jury was given a verdict form with three options: (1) "We, the jury, find for [HAW Financial] in the sum of $____"; (2) "We, the jury, find for [Johnson] in the sum of $____"; or (3) "We, the jury, find for [Johnson]." The jury deliberated and returned a verdict with a check by the third option, "We, the jury, find for [Johnson]." The trial court subsequently entered judgment, ordering and adjudging that HAW Financial take nothing and that the action be dismissed on the merits.

The trial court reserved ruling on the issue of attorney fees and expenses until after trial by agreement of the parties. After conducting an evidentiary hearing at which counsel for Johnson testified, the trial court found that Johnson was the "prevailing party" under the attorney fees provision of the employment agreement and that the amount of attorney fees sought by him was reasonable. Based on these findings, the trial court awarded Johnson $557,452.71 in attorney fees, costs and expenses.

9

HAW Financial now appeals from the judgment entered on the verdict and the award of contractual attorney fees to Johnson.

1. HAW Financial contends that the trial court erred in failing to grant its motion for directed verdict on its claim for breach of the employment agreement and on Johnson's affirmative defenses to that claim.[1] HAW Financial maintains that the uncontroverted evidence shows that Johnson ratified the employment agreement and promissory notes by continuing to work at HAW Financial and by accepting further loans after learning of the company's alleged contractual misrepresentations and breaches of warranty. HAW Financial essentially argues that by continuing to work and accept payments after learning of the alleged misrepresentations and breaches of warranty, Johnson reaffirmed his contractual obligations and waived any defense to repayment of the notes. We disagree.

> [A] trial court's denial of a motion for a directed verdict . . . is to be reviewed using the any evidence test, and the evidence is to be construed most favorably toward the party opposing the motion. The question before this Court, then, is not whether the verdict and judgment of the trial court were merely authorized, but whether a contrary judgment was demanded. Put another way, we are required to construe

---

[1] HAW Financial does not appeal the trial court's denial of its motion for directed verdict on Johnson's counterclaims.

the evidence with every inference and presumption in favor of upholding the verdict, even where the evidence is in conflict. Indeed, so long as there is some evidence to support the jury's verdict, it must be upheld on appeal. This is because jurors are the sole and exclusive judges of the weight and credit given to evidence presented at trial.

(Footnotes omitted.) *Turnage v. Kasper*, 307 Ga. App. 172, 178-179 (1) (704 SE2d 842) (2010).

Generally, "[w]hen a contract is continued in spite of a known excuse, the defense thereupon is lost and the injured party is himself liable if he subsequently fails to perform." *Nguyen v. Talisman Roswell, LLC*, 262 Ga. App. 480, 482-483 (585 SE2d 911) (2003). This contractual waiver "may be express, or may be inferred from actions, conduct, or a course of dealing." (Footnote and punctuation omitted.) *Greater Ga. Life Ins. Co. v. Eason*, 292 Ga. App. 682, 687 (2) (665 SE2d 725) (2008). "However, all the attendant facts, taken together, must amount to an intentional relinquishment of a known right, in order that a waiver may exist." (Citations omitted.) *Bollea v. World Championship Wrestling*, 271 Ga. App. 555, 562 (5) (610 SE2d 92) (2005). And "where the only evidence of an intention to waive is what a party does or forbears to do, there is no waiver unless his acts or omissions to act are so manifestly consistent with an intent to relinquish a then-known particular right or

benefit that no other reasonable explanation of his conduct is possible." (Citation and punctuation omitted.) Id. "When the evidence is in conflict, the issue of waiver must be decided by the jury." *Young v. Oak Leaf Builders*, 277 Ga. App. 274, 277 (1) (626 SE2d 240) (2006).

Here, the evidence at trial did not demand a finding that Johnson waived his affirmative defense that HAW Financial had breached the representations and warranties in the employment agreement, excusing him from his contractual obligation to repay the notes. While there was evidence that Johnson became aware of problems with the pre-employment contractual representations and warranties shortly after beginning to work at HAW Financial, Johnson testified that, at the time, he still believed he could convince management to correct the problems and was "trying [his] best to get this worked out so [his] clients could be happy." Johnson testified that he "continually brought . . . issues to the table" in an effort to get HAW Financial to fulfill the promises that it had been made to him. According to Johnson, he "spoke to multiple members of management . . . to try to get them to pay attention to what was going on and fix the problems." And there was evidence that in response to the concerns that Johnson had voiced to management, HAW Financial assured him that they were trying to cure the problems he had identified.

Under these circumstances, a jury could reasonably find that Johnson did not intend to waive his right to enforce the representations and warranties contained in the employment agreement by continuing to work at HAW Financial and receive further loans, despite learning of some problems with the representations that had been made to him. Rather, the jury could find that Johnson had chosen to stay at HAW Financial and continue to honor his contractual obligations based on the assurances that he received from the company that it would address the problems he had identified that were affecting his ability to maintain and grow his client base. The trial court therefore committed no error in denying HAW Financial's motion for a directed verdict on its claim for breach of contract and on Johnson's affirmative defenses to that claim.

2. HAW Financial also contends that the trial court abused its discretion by excluding from evidence Plaintiff's Exhibit No. 30, a chain of emails that were redacted except for one email message purportedly from an employee of the SEC to HAW Wealth regarding the SEC examination of the firm that had occurred during the time of Johnson's recruitment. HAW Financial argues that the trial court erroneously excluded the email message for lack of proper authentication and that the exclusion was harmful, given that the message would have shown the jury that the SEC

13

examination ultimately was closed with no enforcement action taken against HAW Wealth.

HAW Financial has failed to carry its burden of proving error from the record on appeal because it never proffered the excluded email message at trial so that it would be part of the record on appeal. Furthermore, in its initial appellate brief, HAW Financial purportedly quotes the unredacted email message that was excluded from evidence at trial, but then admits in its reply brief that it had mistakenly quoted a portion of the email exchange that had been redacted rather than the unredacted portion it had sought to have admitted into evidence. Moreover, after noting its initial mistake in quoting the unredacted email message, HAW Financial does not then quote in its reply brief the actual language of the email message that it contends should have been admitted.

As we have repeatedly emphasized, "the burden is on the party alleging error to show it by the record and . . . where the proof necessary for determination of the issues on appeal is omitted from the record, an appellate court must assume that the judgment below was correct and affirm." (Citation omitted.) *Enchanted Valley RV Park Resort, Ltd. v. Weese*, 241 Ga. App. 415, 417 (1) (c) (526 SE2d 124) (1999). Because HAW Financial never proffered the excluded email message at trial and the

14

email is not in the appellate record, we presume that the trial court's evidentiary ruling was correct. See *Fletcher v. Estes*, 268 Ga. App. 596, 597 (1) (602 SE2d 164) (2004) (noting that "[t]his court cannot determine the propriety of the trial court's ruling without a proffer of the excluded evidence or testimony") (citation and punctuation omitted).

In any event, even if we were to assume that the excluded email message reflected that the SEC examination of HAW Wealth had been closed with no enforcement action taken, there still was no reversible error. "An appellant must show harm as well as error to prevail on appeal; error to be reversible must be harmful." (Punctuation and footnote omitted.) *All Fleet Refinishing v. W. Ga. Nat. Bank*, 280 Ga. App. 676, 683 (7) (a) (634 SE2d 802) (2006). HAW LLP's chief executive officer and managing partner testified that "everything was cleared" by the SEC, that the SEC inquiry had been "closed," and that the SEC levied no fines or sanctions. HAW Financial's former managing director likewise testified that the SEC "did not find any wrongdoing by [HAW Wealth]," that the SEC allegations had been "dismissed," and that the SEC examination "was closed out and all matters were resolved." Because the excluded email message was cumulative of other properly admitted evidence, its

exclusion, even if it had been error, was harmless. See *Arrington v. Andrews*, 152 Ga. App. 572, 574 (3) (263 SE2d 491) (1979).

3. HAW Financial next contends that the trial court erred in its charge to the jury on the merger clause contained in the employment agreement. According to HAW Financial, the trial court's merger clause instruction indicated to the jury "that the merger clause contained in the employment agreement applies only to the parties to the employment agreement," and thus implied that oral promises made to Johnson by representatives of *HAW Wealth* made before HAW Financial and Johnson signed the employment agreement were not barred by the merger clause and could be considered by jurors.[2] HAW Financial argues that the merger clause instruction was erroneous because the merger clause was intended to bar the consideration of representations made to Johnson by HAW Wealth before the signing of the employment agreement, not just prior representations made by HAW Financial. We are unpersuaded in light of the express language of the employment agreement

_____

[2] HAW Financial also argues that the merger clause instruction was confusing because it referred to " both companies," but it is clear that the reference, when read in the context of the evidence presented at trial and the closing arguments, was to HAW Financial and HAW Wealth.

16

reflecting that the merger clause was intended only to apply to prior representations made by the "parties" to the agreement.

> It is axiomatic that contracts must be construed to give effect to the parties' intentions, which must whenever possible be determined from a construction of the contract as a whole. Whenever the language of a contract is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required or even permissible, and the contractual language used by the parties must be afforded its literal meaning. Where a conflict exists between oral and written representations, it has long been the law in Georgia that if the parties have reduced their agreement to writing, all oral representations made antecedent to execution of the written contract are merged into and extinguished by the contract and are not binding upon the parties. In written contracts containing a merger clause, prior or contemporaneous representations that contradict the written contract cannot be used to vary the terms of a valid written agreement purporting to contain the entire agreement of the parties, nor would the violation of any such alleged oral agreement amount to actionable fraud.

(Punctuation and footnotes omitted.) *First Data POS, Inc. v. Willis*, 273 Ga. 792, 794-795 (2) (546 SE2d 781) (2001). The construction of a contract is an issue of law for the courts to resolve, *Savannah Jaycees Foundation v. Gottlieb*, 273 Ga. App. 374, 376 (1) (615 SE2d 226) (2005), and the trial court's construction of a contract is

subject to de novo review. See *Reynolds Properties v. Bickelmann*, 300 Ga. App. 484, 487 (685 SE2d 450) (2009).

Mindful of these principles, we turn to the merger clause contained in paragraph 6.8 of the employment agreement. The merger clause provides:

> This Agreement contains the entire agreement *of the parties* with respect to the subject matter hereof. All understanding and agreements heretofore made *between the parties hereto* with respect to the subject matter of this Agreement are merged into this document which alone fully and completely expresses *their* agreement. This Agreement may not be changed orally but only by an agreement in writing signed by *both parties*.

(Emphasis supplied.)

In construing the merger clause, we first note that Johnson and HAW Financial are the only parties to the employment agreement, a point undisputed at trial and on appeal. The initial paragraph of the agreement clearly refers to the agreement "made and entered into . . . by and between . . . Johnson . . . and [HAW Financial]," and the signature page refers to "the parties hereto who have executed this Agreement," followed by the signatures of Johnson and HAW Financial's representative.

Furthermore, the employment agreement differentiates between HAW Financial and HAW Wealth and refers to the two entities separately throughout its

provisions. The employment agreement defines the "Agreement" as between the "Company" and Johnson, and the "Company" is defined as HAW Financial and *any successor entities* to HAW Financial, thereby excluding from its ambit HAW Wealth, the parent company of HAW Financial. More specifically, "Company" is defined by the employment agreement as "[HAW Financial], its successors and assigns, and any other corporation, partnership, limited liability company, sole proprietorship or other type of business entity into which [HAW Financial] may be merged, consolidated or otherwise combined."

In contrast, the agreement contains a separate definition for "Affiliate" and expressly states that "[f]or the avoidance of doubt, [HAW Wealth] . . . shall be deemed to be [an] Affiliate[] of the Company." Notably, several provisions of the employment agreement refer jointly to the "Company" and its "Affiliates."

Given the express language and structure of the employment agreement, it is clear that the merger clause was not intended to apply to non-party affiliates of HAW Financial such as HAW Wealth. By its plain language, the merger clause applies only to prior representations made by the parties to the employment agreement, and Johnson and HAW Financial are the sole parties. And, as noted above, when the parties intended to make a specific paragraph of the employment agreement

applicable to non-party affiliates of HAW Financial such as HAW Wealth, they did so expressly, and thus "we must presume that [their] failure to do so [in the merger clause] was a matter of considered choice." (Citation and punctuation omitted.) *Brazeal v. Newpoint Media Group, LLC*, 331 Ga. App. 49, 55 (769 SE2d 763) (2015). It follows that the trial court properly concluded that the merger clause did not bar consideration of prior representations to Johnson by the non-party HAW Wealth and in instructing the jurors accordingly.

In any event, even if we were to assume that the merger clause instruction contained erroneous or confusing language, any error was harmless because the instruction concerned a theory of recovery that the jury rejected. The language of the instruction that HAW Financial claims was erroneous specifically addressed the circumstances under which Johnson "may recover *damages* against [HAW Financial]," and, as previously noted, the jury awarded no damages to Johnson on his counterclaims against HAW Financial. Because the jury did not award Johnson damages, HAW Financial cannot show any prejudice from the challenged merger clause instruction. See *Burchfield v. Madrie*, 241 Ga. App. 39, 42 (4) (524 SE2d 798) (1999) (any error in charge on nominal damages was harmless because "the jury failed to award any damages whatsoever").

20

4. HAW Financial contends that the trial court erred in awarding contractual attorney fees to Johnson as the prevailing party under the employment agreement. We disagree.

Johnson's claim for attorney fees was based on paragraph 6.6 of the employment agreement, which provides:

> In the event of legal action by either party to enforce this Agreement, the prevailing party in such action shall be entitled to recover from the other party its or his expenses of litigation (including reasonable attorney[] fees, court costs, and expert witness fees) actually incurred.

As previously noted, the jury returned a verdict that simply stated, "We, the jury, find for [Johnson]." Based on this verdict, the trial court found that Johnson was the "prevailing party" under paragraph 6.6 of the employment agreement and awarded him attorney fees and expenses.

We discern no error by the trial court. "In the absence of a controlling statute, a party's entitlement to attorney fees under a contractual provision is determined by the usual rules of contract interpretation." *Eagle Jets, LLC v. Atlanta Jet*, 321 Ga. App. 386, 401 (740 SE2d 439) (2013), quoting *Benchmark Builders v. Schultz*, 289 Ga. 329, 330-331 (2) (711 SE2d 639) (2011). Construing contractual language granting attorney fees to the "prevailing party," Georgia courts have held that

21

a plaintiff prevails when actual relief on the merits materially alters the legal relationship between the parties by modifying the defendant's behavior in any way that directly benefits the plaintiff, and that unlike plaintiffs who typically must obtain some affirmative relief on their claim to be deemed the prevailing party[,] defendants prevail by *not* having any relief imposed against them.

(Punctuation and footnotes omitted; emphasis in original.) *Marino v. Clary Lakes Homeowners Assn.*, 331 Ga. App. 204, 208-209 (1) (770 SE2d 289) (2015). See *Benchmark Builders v. Schultz*, 294 Ga. 12, 14 (751 SE2d 45) (2013); *Magnetic Resonance Plus v. Imaging Systems Intl.*, 273 Ga. 525, 529 (3) (543 SE2d 32) (2001). Applying this rule, we recently held that upon the dismissal of the plaintiff's only remaining claim, "the [defendants] prevailed, *regardless of their counterclaims*, by not having any relief imposed against them." (Citation and punctuation omitted; emphasis supplied.) *Marino*, 331 Ga. App. at 209 (1).

Here, the jury expressly found in favor of Johnson, and Johnson in his status as defendant had no relief imposed against him.[3] Consequently, the trial court

---

[3] While HAW Financial and Johnson initially agreed to a temporary consent order enforcing the terms of the non-solicitation covenant in the employment agreement, HAW Financial later voluntarily dismissed its non-solicitation claim without prejudice. In light of the voluntary dismissal, HAW Financial never obtained any relief on the merits against Johnson that materially altered the legal relationship

22

committed no error in finding that Johnson was the prevailing party under the attorney fees provision of the employment agreement, regardless of whether he succeeded on his counterclaims.[4] See *Marino*, 331 Ga. App. at 209 (1), 211-212 (4). See also *Eagle Jets, LLC*, 321 Ga. App. at 402-403 (defendant was prevailing party where judgment was entered denying all of the plaintiff's claims).

Furthermore, the net result of the verdict in this case was that the outstanding balance and accrued interest on the loans that formed the transition incentive payment that HAW Financial made to Johnson were forgiven, entitling Johnson to keep the funds without any further recourse by HAW Financial. Thus, to the extent that either party obtained any relief on the merits as the result of the verdict in this case, it was Johnson, which further supports the trial court's finding that he was the prevailing

of the parties. See *Morris v. Morris*, 222 Ga. App. 617, 618 (1) (475 SE2d 676) (1996) (voluntary dismissal of a claim without prejudice, which is not an adjudication on the merits, does not "control the identity of the prevailing party" for purposes of awarding attorney fees).

[4] In a footnote of its brief, HAW Financial suggests that the trial court also erred in failing to segregate out the attorney fees incurred by Johnson in successfully defending against HAW Financial's claims from the fees he incurred in prosecuting his claim for damages on his counterclaims. But HAW Financial failed to raise this argument in the trial court, and the trial court never ruled on the issue. We will not consider legal issues that were neither raised below nor ruled upon by the trial court. See *Nash v. Studdard*, 294 Ga. App. 845, 849 (2) (670 SE2d 508) (2008).

party entitled to attorney fees and expenses. Cf. *Hendrix v. Stone*, 261 Ga. 874, 875 (2) (412 SE2d 536) (1992) (trial court did not err in finding that party whose child support obligation was reduced by jury verdict was the prevailing party).

HAW Financial emphasizes, however, that in addition to the attorney fees provision in the employment agreement, each promissory note executed by Johnson contained a separate provision allowing the note holder to recover reasonable attorney fees and expenses incurred in collecting amounts payable under the note. According to HAW Financial, its claims against Johnson at trial "were solely for collection of Johnson's unpaid indebtedness under the notes, and the notes expressly provide for attorney's fees *only* to the holder of the notes for fees incurred in attempting to collect." Consequently, HAW Financial argues that Johnson could not recover attorney fees for successfully defending against the note claims, given that "there is no mechanism in the notes providing [Johnson] the ability to recover his costs in that defense." We are unpersuaded.

As an initial matter, contrary to HAW Financial's suggestion, the promissory notes at issue in this case cannot be viewed in isolation from Johnson's employment agreement. The employment agreement spelled out the specific circumstances under which Johnson was required to repay the "transition incentive payment" made to him

24

in the form of the forgivable loans evidence by the notes, and the notes expressly referenced the agreement and incorporated the contractual terms that addressed the conditions under which the loans would or would not be forgiven. Thus, any claim for collection on the notes brought by HAW Financial necessarily required a consideration of the repayment terms of the employment agreement and a showing that Johnson had breached those terms. It follows that HAW Financial's claims were not simply claims to collect on the notes, but rather were interwoven with a claim for breach of the employment agreement.

Furthermore, "contemporaneous agreements entered into by the same parties arising out of the same transaction may be read together to show one contract." *Foreman v. Chattooga Intl. Technologies*, 289 Ga. App. 894, 896 (658 SE2d 470) (2008). See *Employers Commercial Union Ins. Co. v. Wrenn*, 132 Ga. App. 287, 288 (2) (208 SE2d 124) (1974). The trial court ruled that Johnson's employment agreement and the promissory notes should be read as one integrated contract, and HAW Financial does not dispute that ruling on appeal. Because the employment agreement and notes undisputedly constituted one integrated contract, HAW Financial's breach of contract claims to collect funds allegedly owed by Johnson as a result of his resignation necessarily sought to enforce the terms of the employment

25

agreement, thereby triggering the application of the attorney fees provision of that agreement that entitled the "prevailing party" in the "action" to recover fees and expenses.

HAW Financial nonetheless argues that even if the notes and employment agreement are construed as one contract, the "specific" attorney fees provision contained in the notes must prevail over the more "general terms" of the attorney fees provision contained in the employment agreement, and that, as a result, Johnson cannot recover for his successful defense to HAW Financial's claims relating to his indebtedness on the notes. It is true that a specific contract provision prevails over a conflicting general contract provision. *Tower Projects, LLC v. Marquis Tower*, 267 Ga. App. 164, 166 (1) (598 SE2d 883) (2004). But neither provision prevails over the other if the two provisions are consistent with one another. *Deep Six v. Abernathy*, 246 Ga. App. 71, 74 (2) (538 SE2d 886) (2000). And a "contract is to be considered as a whole, and each provision is to be given effect and interpreted so as to harmonize with the others." *Georgia Farm Bureau Mut. Ins. Co. v. Gaster*, 248 Ga. App. 198, 199 (546 SE2d 30) (2001). A construction of the contract that would render "any part of the contract unreasonable or having no effect" should be avoided. *Sofran*

*Peachtree City, LLC v. Peachtree City Holdings, LLC*, 250 Ga. App. 46, 50 (550 SE2d 429) (2001).

Applying these interpretive principles in the present case, we conclude that the attorney fees provisions of the employment agreement and promissory notes are complementary rather than contradictory. Construed together and in a manner to harmonize the provisions with one another, the attorney fees provision of the employment agreement permits either party which prevails in the overall "action" to recover attorney fees and expenses, while the attorney fees provision in the notes more narrowly permits the holder to recover fees for successfully pursuing a claim to collect on the notes, even if the holder is otherwise found not to have prevailed in the overall action. Thus, the attorney fees provision in the notes did not preclude Johnson from recovering his attorney fees as the "prevailing party" in the "action" under the fees provision of the employment agreement, as the trial court properly concluded.

*Judgment affirmed. Ray and McMillian, JJ., concur.*